OPINION OF THE COURT
Parker J. Stone, J.
Petitioners have instituted an article 78 proceeding questioning the legality of the action taken by the Board of Education of the West Genesee Central School District (Board) in authorizing the closing of the Camillus Elementary School prior to the filing of an environmental impact statement. The petitioners allege that the Board failed to comply with the provisions of ECL 8-0113 (ECL art 8, entitled "State Environmental Quality Review Act” [SEQRA]) and the applicable regulations. Both parties acknowledge that the Board, over a number of years, has reviewed in depth the possibility of closing the Camillus Elementary School.
On December 19, 1978, the Board resolved to close Camillus Elementary School because of declining enrollment and budg *217 etary constraints. On December 12, 1978, the Board passed a resolution declaring that the proposed closing was not subject to SEQRA inasmuch as it constituted a "routine activity” under section 617.13 (subd [d], par [17]) of the regulations adopted pursuant to SEQRA. (6 NYCRR 617.13 [d] [17].) Section 617.13 of title 6 of the Official Compilation of Codes, Rules and Regulations of the State of New York, entitled "Type II Actions”, reads as follows:
"(a) Actions or classes of actions which have been determined not to have a significant effect on the environment are classified as Type II actions, and do not require environmental impact statements or any other determination or procedure under this Part. * * *
"(d) The following actions are Type II actions: * * * (17) Routine activities of educational institutions which do not include capital construction”.
The court, in reviewing the action taken by the Board, may make no new or substitute judgments, but must restrict itself to ascertaining whether there has been illegality, arbitrariness or abuse of discretion (Matter of Lemir Realty Corp. v Larkin, 11 NY2d 20; Conley v Town of Brookhaven Zoning Bd., 40 NY2d 309). Therefore, the sole issue is whether the December 12, 1978 determination by the Board had a legal basis; if so, the proposed closing of the school requires no environmental impact statement.
The SEQRA statute and regulations do not furnish the court with a definition of "routine activity” as it applies to an educational institution. It is clear from the context of the specific regulation that the definition of "routine activity” could include capital construction inasmuch as "capital construction” is specifically excluded from the definition. Since the "capital construction”, at least within the contemplation of the regulations, is clearly an activity extending beyond ordinary day-to-day activities of a school board, the term "routine activity” does not necessarily demand a narrow construction, and is not therefore limited to day-to-day school activities.
Pursuant to sections 1804 and 1709 of the Education law, a central school district, through its board of education, may transfer students from one class or department to another. Such a transfer is a routine activity. Transferring students from one school to another would also be encompassed by this statutory authority and again would be clearly a routine *218 activity. When a transfer of students consists of the entire school population, even though resulting in a school closing, it must also be considered a "routine activity”. A "routine activity”, regardless of how extensively implemented, does not blossom into a nonroutine activity.
It is quite clear that the board of education of a central school district has the legal authority to close a school when the need exists (Glover v Board of Educ., 7 AD2d 319). As a trustee of the taxpayers’ funds, it has the further obligation to transfer students, when necessary, to maintain an economically sound school system.
The court therefore finds that the determination made by the Board on December 12, 1978 was in accord with the intent of SEQRA and not illegal, arbitrary or an abuse of discretion.
Respondent’s motion to dismiss the petition is granted.