OPINION OF THE COURT
Con. G. Cholakis, J.
Combined for treatment are three CPLR article 78 proceedings, each brought "to review a determination of the *391 Commissioner of Education made pursuant to subdivision 20 of section 2554 of the Education Law by which approval was granted to the Board of Education of the City School District of the City of New York to operate a school program in conjunction with Phoenix House Foundation, Inc., at the site of the former Loyola Seminary in Shrub Oak, in the Town of Yorktown, New York. It appears that for a number of years the New York City school system has operated school programs in conjunction with Phoenix House and its drug abuse programs, and the subject application was made so as to enable the continuation of this practice outside of New York City when Phoenix House purchased the seminary property and determined that it would operate a residential drug treatment program at the site. These proceedings are brought by homeowners in the area, the Lakeland School District, and elected officials of the Town of Yorktown. The commissioner’s determination is attacked upon several grounds, but most emphatically it is argued that the commissioner was obligated by statute to consider the environmental impact of the proposed educational facility and that by failing to do so he violated both subdivision 3 of section 408 of the Education Law and the directions of the Environmental Conservation Law.
Subdivision 3 of section 408 of the Education Law requires environmental considerations and consideration of other factors in connection with the commissioner’s approval of plans for “the erection or purchase of any school building or addition thereto”. The commissioner has taken the position that this statute has no applicability for the reason that the “purchase” was made by Phoenix House and not by the New York City School District. While the petitioners argue that the statute must not be so narrowly construed, the court must conclude that its applicability is questionable, at least, and, accordingly, the court’s determination will not be based upon a ruling that the commands of the section were violated. It is observed, however, that the intent of this legislation does add support to the petitioners’ argument.
In reaching his determination, the commissioner additionally found that the provisions of the State Environmental Quality Review Act (SEQRA; ECL 8-0101 et seq.) *392 were not applicable to his action, and that, accordingly, it was not necessary to prepare an environmental impact statement (see ECL 8-0109). In this respect the court must conclude that the commissioner erred and that his determination was therefore improper and must be set aside.
Upon the proceeding the commissioner has argued that his determination was properly classified as a Type II determination pursuant to 6 NYCRR Part 617 and for this reason no impact statement was required of him. This argument must be rejected. Firstly, it is not clearly demonstrated that the commissioner’s determination was “Type II”. Secondly, the mere fact that an activity is not listed in the regulations as Type I does not carry with it a presumption that there will be no significant effect upon the environment. In situations where the activity involved is not listed, the regulations continue to provide criteria (ignored by the respondent commissioner) to determine whether the proposal may still have the significant environmental effect which requires the statement (see 6 NYCRR 617.11).
Basically, what is rejected is the commissioner’s conclusion that the application considered and approved by him entailed no change in the use of the building and accordingly could have no effect upon the environment. This conclusion appears incredible in view of the statutory definition of “ ‘[environment’ ” which includes “existing patterns of population concentration, distribution, or growth, and existing community or neighborhood character” (ECL 8-0105, subd 6). The former use of the premises, it is to be recalled, was as an educational site for Jesuit seminarians and for a short time as an educational facility described as a “Baptist Bible Institute”. The new education purpose of the building is for the education of resident students participating in a drug rehabilitation program. (The students have been described as “educationally deficient drop-outs, dysfunctional due to substance abuse”).
The discussion need not be prolonged. Even if one were to properly view the Phoenix House operation as separate and distinct from the educational operation approved by the commissioner (and it is clearly a joint project), the submissions to this court combine to illustrate the strong possibility that this separate educational activity most *393 likely will significantly affect the statutorily defined environment. The educational program certainly involves a new and different type of student. Obviously the physical facilities concerning security must be altered. The community and neighborhood character, it would appear, must be changed. The commissioner’s conclusion that he is exempted from the requirement of an environmental impact statement was unwarranted, particularly when it is recalled that the statute requires the statement not only when the environment will be affected as a matter of certainty, but with regard to any action which agencies “propose or approve which may have a significant effect on the environment”. (ECL 8-0109, subd 2; emphasis supplied; H.O.M.E.S. v New York State Urban Dev. Corp., 69 AD2d 222, 232.)
While the conclusion above reached is dispositive of the proceedings, it is appropriate to comment upon an additional issue. It is not disputed that a large number of students whose education is contemplated at the Phoenix House facility are expected to be over the age of 18. It is additionally demonstrated that many (46.7%) of those in residence will be over the age of 21, with some as old as age 30. Further, it is suggested that all students may not be residents of the New York City School District. Given these considerations, the court is convinced that the commissioner acted in contravention of statute (Education Law, § 2554, subd 20) when approving the district’s application without limitation or qualification. Subdivision 20 of section 2554 of the Education Law grants to the board of education the power and duty: “To provide, outside the territorial limits of the city school district but within the state or within an adjoining state, for the education of children resident within the city school district whenever in the judgment of the board of education, approved by the commissioner of education, the health or welfare of such children makes such provision necessary or desirable, and the average daily attendance of such pupils shall be included in the average daily attendance of such district as certified to the commissioner in the report of the board of education.” (Emphasis supplied.)
*394 The commissioner argues that the statute is reasonably interpreted so as to allow the word “children” to be construed as being persons as old as 21 who have not received high school diplomas. The argument is based upon the right to a free public education granted by section 3202 of the Education Law. Section 3202, however, is a separate statute written to accomplish a separate purpose. The statute in issue appears clear and unambiguous and the interpretation given the statute by the commissioner so as to allow the determination he reached is without reasonable basis and must be viewed as arbitrary as a matter of law (Matter of Duncan v Nyquist, 43 AD2d 630).
Other issues have been considered, but discussion of the same is found unnecessary. It is, however, particularly noted that the defenses raised that the petitioners lack standing are found to be without merit and are rejected.