In the Matter of CHARLES SCHWEISS et al., Respondents, v GORDON M. AMBACH, as Commissioner of Education of the State of New York, et al., Appellants. (Proceeding No. 1.)

In the Matter of ALFRED B. DEL BELLO, as Westchester County Executive, et al., Respondents, v GORDON M. AMBACH, as Commissioner of Education of the State of New York, et al., Appellants. (Proceeding No. 2.)

In the Matter of BOARD OF EDUCATION, LAKELAND CENTRAL SCHOOL DISTRICT OF SHRUB OAK, Respondent, v GORDON M. AMBACH, as Commissioner of Education of the State of New York, et al., Appellants. (Proceeding No. 3.)

Third Department, December 22, 1983

150

APPEARANCES OF COUNSEL

*Robert D. Stone* (*Kenneth Pawson* of counsel), for Gordon M. Ambach, appellant in the above-entitled proceedings.

*McCarthy, Fingar, Donovan, Glatthaar, Drazen & Smith* (*Henry J. Smith* and *James G. Fine* of counsel), for Phoenix House Programs of New York, Inc., and another, appellants in the above-entitled proceedings.

*Frederick A.O. Schwarz, Jr., Corporation Counsel* (*Trudi Mara Schleifer* of counsel), for New York City Board of Education and another, appellants in the above-entitled proceedings.

*Steyer & Sirota* (*Murray Steyer* and *Frances S. Sirota* of counsel), for Charles Schweiss and another, respondents in the first and third above-entitled proceedings.

*Samuel S. Yasgur, County Attorney* (*Denise J. D'Ambrosio* and *Lester D. Steinman* of counsel), for Alfred B. Del Bello and others, respondents in the second above-entitled proceeding.

OPINION OF THE COURT

CASEY, J.

The determination of the Commissioner of Education, which granted the application of the Board of Education of the City School District of the City of New York to establish a public school in the Town of Yorktown, Westchester

County, is neither irrational nor violative of any statutory requirement. Special Term's judgment (115 Misc 2d 390) annulling the determination must, therefore, be reversed.

In October, 1980, respondents Phoenix House Foundation, Inc., and/or Phoenix House Programs of New York, Inc. (Phoenix House), operators of substance abuse treatment facilities, purchased the former Loyola Seminary in the Town of Yorktown, Westchester County, which consisted of 145 acres with several buildings, including a modern four and five-story brick/concrete structure. The facility had been operated, first as a Jesuit seminary and later as a residential bible school, since 1955. It was the intention of Phoenix House to close one of its residential drug treatment facilities in Manhattan and relocate the program at the newly purchased facility in Yorktown. The prospect of a residential drug treatment facility, serving up to 350 teenagers and young adults, roused considerable public opposition from local citizens and officials, culminating in a number of judicial proceedings, including those under review here.

Since 1971, the Board of Education of the City School District of the City of New York (city school board) has operated public school annexes at Phoenix House residential facilities located within the city school district. The city school board operated such an annex at the Phoenix House program in Manhattan that was to be transferred to the Yorktown facility, and the city school board agreed to continue operating the annex at the new facility. Since the annex was to be located outside the territorial limits of the city school district, the city school board had to obtain the approval of the Commissioner of Education to operate the public school annex at the Phoenix House facility in Yorktown (Education Law, § 2554, subd 20). The commissioner's determination granting such approval is the object of petitioners' challenge in these three proceedings.

■ Petitioners are residents of the community, local officials and the school board of the local school district. The record and briefs herein reveal that at the heart of petitioners' opposition is their general objection to the location of a residential drug treatment facility in their community and the resultant adverse impact on their

community, which they view as inevitable. The legal grounds for these proceedings are, however, much more narrow. First, it is argued that the commissioner erred in failing to require an environmental impact statement. There is no merit in this claim.

An environmental impact statement must be prepared for any action approved by a State agency which may have a significant impact on the environment (ECL 8-0109, subd 2). The action at issue here — operation of a city school annex in conjunction with a residential drug treatment program — required not only the approval of the Commissioner of Education as noted above (Education Law, § 2554, subd 20), but also the approval of the Division of Substance Abuse Services (Mental Hygiene Law, § 23.01). Where the approval of two or more agencies is involved, the determination as to whether an environmental impact statement need be prepared is often made by the "lead agency" (ECL 8-0109, subd 4), which is the agency having principal responsibility for approving the action (ECL 8-0111, subd 6). The two agencies involved here, however, treated the two component uses of the proposed facility as separate and distinct for the purpose of determining the need for an environmental impact statement, with each agency making its own determination with respect to the component for which its approval was required (see 6 NYCRR 617.7 [a] [1]). We find nothing unlawful or irrational in this procedure or in the resulting determination by the commissioner.

The commissioner concluded that an environmental impact statement was not required with respect to the use of the Yorktown facility as a public school annex since such use was consistent with the facility's prior use for residential educational purposes and no construction or other capital improvements were proposed. In support of this determination, the commissioner has cited cases in which the courts held that an environmental impact statement is not required for the transfer of students from one school building to another (see *Engle v Pulver,* 80 AD2d 598; *Matter of Hopkins v Board of Educ.,* 99 Misc 2d 216). Recognizing this principle, petitioners argue that the commissioner erred in failing to consider the proposed use of

the Yorktown facility as a public school annex in conjunction with its proposed use as a residential drug treatment program. Had the commissioner properly considered both proposed uses, petitioners argue, he would have found a potential environmental impact not present in the case of the mere transfer of students from one school building to another. The Division of Substance Abuse Services, however, issued its determination with respect to the proposed use of the facility as a residential drug treatment program, finding no need for an environmental impact statement. This determination was challenged in a CPLR article 78 proceeding, but ultimately it was confirmed by the Appellate Division, Second Department (*Matter of Town of Yorktown v New York State Dept. of Mental Hygiene,* 92 AD2d 897, affd 59 NY2d 999). In view of this judicial approval of the administrative finding that the proposed use of the facility as a residential drug treatment program would have no significant effect on the environment, there is no merit in petitioners' challenge to the rationality of the commissioner's determination based upon the claim that the joint use of the facility creates a greater potential for significant environmental impact than would its use as a public school annex alone. Nor is there any basis for the converse argument that the joint use of the facility somehow creates a greater potential for significant environmental impact than would its use as a residential drug treatment program alone. Accordingly, we find no grounds for disturbing the commissioner's determination finding no need for an environmental impact statement.

■ Next, we reject the claim that in approving the proposed public school annex, the commissioner erred in failing to consider certain factors mandated by subdivision 3 of section 408 of the Education Law. By its own terms, the statute applies only where the school district proposes to erect, purchase, repair, remodel or enlarge a schoolhouse. Here, however, the Yorktown facility was purchased by Phoenix House, not the city school district.

■ Petitioners also argue that the commissioner's approval of the city school board's application to operate a public school annex at the Phoenix House facility in Yorktown violates subdivision 20 of section 2554 of the Educa-

tion Law, which authorizes a city school board: "To provide, outside the territorial limits of the city school district * * * for the education of children resident within the city school district whenever in the judgment of the board of education, approved by the commissioner of education, the health or welfare of such children makes such provision necessary or desirable." Documents in the record show that the proposed public school annex will be attended by eligible persons in the Phoenix House program up to the age of 21. Petitioners contend that the statutory reference to "children" limits the age of those who can be educated to 18 and that, therefore, approval of the proposed annex violates the statute. The commissioner, on the other hand, construes the word "children" as synonymous with those entitled to tuition-free public education pursuant to subdivision 1 of section 3202 of the Education Law, which refers to persons under 21 years of age who have not received high school diplomas. Contrary to petitioners' contention, the use of the word "children", rather than the phrase "persons under the age of 21", does not indicate a clear and unambiguous legislative intent to create an age limit of 18. Throughout the Education Law, the words "persons", "children", "student", "pupil" and "child" are used frequently without apparent regard for any particular technical meaning (see, e.g., Education Law, art 65, part I [Compulsory Education]). Indeed, those words have been given no particular technical meaning in the statutory provision which defines numerous terms, including "minor" and "infant", used throughout the Education Law (Education Law, § 2). Moreover, the provision now contained in subdivision 20 of section 2554 predates both the statutory recognition of the age of majority for contractual purposes as 18, rather than 21 (General Obligations Law, § 1-202, as added by L 1974, ch 898, § 1), and the addition to the Education Law of a definition for the terms "minor" and "infant" (Education Law, § 2, subd 18, as added by L 1974, ch 919, § 1). Having concluded that the statute is not free from ambiguity and thus requires interpretation, we recognize that the commissioner's construction " ' "takes on almost the force of judicial interpretation" ' " and must be upheld if not irrational or unreasonable (*Matter of Robins v Blaney,* 59 NY2d 393, 399). There is nothing irrational or

unreasonable in the commissioner's interpretation of subdivision 20 of section 2554 of the Education Law, which seeks to harmonize two relevant statutory provisions that he must administer.

■ Petitioners also contend the statutory requirement that the "health or welfare" of the children to be educated makes the public school annex at the Yorktown Phoenix House facility "necessary or desirable" (Education Law, § 2554, subd 20) has not been met. There are documents in the record, however, showing that the city school board's long-standing relationship with Phoenix House, involving the operation of public school annexes at a number of Phoenix House facilities, is premised on the board's recognition of the integral part played by on-site education in the Phoenix House program. Recognizing that a school was needed at the Yorktown facility, the city school board took the view that since the Yorktown facility would operate a program relocated there from Manhattan, with its participants coming from New York City, the school should be operated by the city school board. Accordingly, we find a rational basis in the record for the commissioner's finding, implicit in his approval of the city school board's application, that the statutory requirement concerning the health or welfare of the children has been met.

■ It also has been suggested that subdivision 20 of section 2554 of the Education Law may be violated since some of the students attending the public school annex at Yorktown might not be residents of the city school district. Such speculation, unsupported by the record, should not serve as a basis for annulling the commissioner's approval of the city school board's application to operate a public school in Yorktown for those persons under the age of 21 who are eligible.

■ Next, there is no merit in petitioners' due process claim. Petitioners were afforded an opportunity to present their objections, which were considered by the commissioner. The record developed in the course of the administrative process provides for adequate judicial review and, as discussed above, establishes that the commissioner's determination neither violated any statutory requirement nor was irrational.

■ Finally, we reject respondents' claim that petitioners lack standing. Under the liberalized standards of *Boryszewski v Brydges* (37 NY2d 361) and its progeny, petitioners' concerns over the impact of the jointly operated residential drug treatment facility and public school annex on their community are sufficient to confer standing to bring judicial proceedings to ensure that the required State agency approval has been granted in accordance with lawful procedure and relevant statutory requirements.

For all of the foregoing reasons, the judgment of Special Term should be reversed, on the law, without costs, the determination confirmed, and the petitions dismissed.

SWEENEY, J. P., KANE, MIKOLL and WEISS, JJ., concur.

Judgment reversed, on the law, without costs, determination confirmed, and petitions dismissed.