OPINION OF THE COURT
John P. DiBlasi, J.
In Matter of Tri-County Taxpayers Assn. v Town Bd. (55 NY2d 41, 46 [1982]), the Court of Appeals determined that in adopting the State Environmental Quality Review Act (SEQRA), "the evident intention of the Legislature was that the environmental impact statements required to be prepared by a local agency * * * with respect to any action which might have a significant effect on the environment should be accessible to members of the town board and the public prior to action on the proposal in question”. In what appears to be a case of first impression, this court must determine whether the provisions of SEQRA (ECL 8-0101 et seq.), or its implementing regulations (see, 6 NYCRR 617.1 et seq.), require that an Environmental Assessment Form (EAF) be filed as a condition precedent to any action upon a petition for the incorporation of a new village.
FACTUAL BACKGROUND
Petitioner is a resident of the Town of Blooming Grove (Blooming Grove) who, together with other residents of that Town, signed a petition (the Petition) seeking to incorporate their own village, to be known as the Village of Clove. The proposed village includes a densely populated area of Blooming Grove known as "Mountain Lodge Park”, and other less densely populated contiguous lands.
On September 1, 1995, the Petition was filed with respondent pursuant to Village Law § 2-202 (1) (f) (1). In response, on September 20, 1995, respondent wrote to petitioner, stating that the proposed incorporation was preliminarily classified as *220 a "Type I” action under SEQRA, and requesting that petitioner provide her with an EAF, so that she could begin the process of a SEQRA review. Thereafter, the parties exchanged correspondence in which they set forth their conflicting positions as to the requirement of SEQRA review as a condition precedent to the incorporation of a new village. No resolution of the dispute was reached, and respondent has refused to take any steps to bring the Petition before a public hearing, as required by Village Law § 2-204. Consequently, petitioner commenced this CPLR article 78 proceeding seeking an order compelling respondent to advertise, schedule and conduct a public hearing upon the Petition. In determining whether petitioner is entitled to the relief sought, the court begins with a review of the relevant provisions of the Village Law and SEQRA.
INCORPORATION UNDER THE VILLAGE LAW
Village Law § 2-200 et seq. set forth the applicable bases and procedures for the incorporation of a village. Pursuant to Village Law § 2-200, "[a] territory containing a population of at least five hundred persons who are regular inhabitants thereof * * * may be incorporated as a village * * * provided such territory does not include a part of a city or village and further provided the limits of such territory” satisfy certain other requirements specified therein.
The requisites for a petition for incorporation are set forth in Village Law § 2-202. Subdivision (a) of this provision first mandates that the petition be signed by a certain minimum percentage of the residents of the territory which is proposed to be a new village. The required contents of the petition, and the exhibits and certifications thereof, are set forth in subdivisions (b) and (c) respectively. On their face, none of these provisions require that SEQRA review be conducted prior to the incorporation of a new village.
Village Law § 2-204 sets forth the steps that must be followed by a town supervisor subsequent to the filing of a petition complying with the requirements of Village Law § 2-202. First, within 20 days after the filing of the petition, the supervisor shall cause a notice to be posted in certain public places and newspapers, which states that a petition for incorporation has been received, and sets forth a date and place for a hearing upon the petition. That statute also directs the supervisor to provide certain other information in the public notice, including the procedure by which objections to the petition may be filed. Pursuant to this provision, that hearing, whose purpose *221 is to consider the legal sufficiency of the petition, is to be conducted "not less than twenty nor more than thirty days after the date of the posting and first publication of [the] notice” (Village Law § 2-204).
After the hearing upon a petition for incorporation, the supervisor has 10 days within which he or she "shall determine whether the petition complies with the requirements of” the statute and render a written decision (Village Law § 2-208 [1]). Assuming that the decision is adverse to the petitioning party, judicial review of the supervisor’s decision is available pursuant to CPLR article 78 (Village Law § 2-210 [1]).
SEQRA CONSIDERATIONS
In 1975, the Legislature enacted SEQRA (ECL art 8), which, inter alia, created a requirement for the review of certain proposed actions by agencies which would have significant impact upon the environment (see, ECL 8-0101 et seq.). Pursuant to the legislation (ECL 8-0113), specific regulations were adopted which define the types of actions which may require SEQRA review, and the agencies which must comply with such requirements. In particular, 6 NYCRR 617.1 (c) states that "SEQR requires that all agencies determine whether the actions they directly undertake, fund or approve may have a significant effect on the environment, and, if it is determined that the action may have a significant effect, prepare or request an environmental impact statement”. The term "environment” is broadly defined as "the physical conditions which will be affected by a proposed action, including land, air, water, minerals, flora, fauna, noise, objects of historic or aesthetic significance, existing patterns of population concentration, distribution, or growth, and existing community or neighborhood character” (ECL 8-0105 [6]).
The controlling regulation for the purpose of this proceeding is 6 NYCRR 617.3, "[gjeneral rules”, which provides in subdivision (a), insofar as relevant, that "[n]o agency involved in an action shall carry out, fund or approve the action until it has complied with the provisions of SEQR.” An "environmental impact statement” (EIS) is "a written document prepared in accordance with” 6 NYCRR 617.8 and 617.14, which "may be either a 'draft’ or a 'final’ ” (6 NYCRR 617.2 [n]). "A draft EIS is the initial statement prepared by either the applicant or the lead agency and circulated for review and comment” (6 NYCRR 617.2 [n]).
"Actions” are classified as Type I, Type II, unlisted, excluded or exempt (6 NYCRR 617. 2 [p], [q], [ii], [jj], [kk]). Pursuant to 6 *222 NYCRR 617.6 (g) (1), "[t]he lead agency must determine the significance of any Type I or unlisted action in writing”.[1] "[T]o require an EIS for a proposed action, the lead agency must determine that the action may include the potential for at least one significant environmental effect” (6 NYCRR 617.6 [g] [1] [i]). In making its determination of environmental significance for a Type I action, the lead agency must, inter alia, review the EAF, the criteria set forth in 6 NYCRR 617.11, "and any other supporting information to identify the relevant areas of environmental concern” (6 NYCRR 617.6 [g] [2] [ii]). However, "[n]o SEQR determination of significance, EIS or findings statement is required for actions which are Type II, excluded or exempt from SEQR” (6 NYCRR 617.3 [j]).
The central term in this proceeding, namely, "actions” includes:
"(1) projects or physical activities, such as construction or other activities that may affect the environment by changing the use, appearance or condition of any natural resource or structure, that:
"(i) are directly undertaken by an agency; or
"(ii) involve funding by an agency; or
"(iii) require one or more new or modified approvals from an agency or agencies;
"(2) agency planning and policy making activities that may affect the environment and commit the agency to a definite course of future decisions;
"(3) adoption of agency rules, regulations and procedures, including local laws, codes, ordinances, executive orders and resolutions that may affect the environment; and
"(4) any combinations of the above” (6 NYCRR 617.2 [b]; see also, ECL 8-0105 [5]).
The types of decisions or actions that are subject to the SEQRA review requirement are also defined in 6 NYCRR 617.2. Under that regulation, the term "approval” means "a discretionary decision by an agency to issue a permit, certificate, license, lease or other entitlement or to otherwise authorize a proposed project or activity” (6 NYCRR 617.2 [e]). Additionally, the terms "[d]irect action” or "directly undertaken action” mean "an action planned and proposed for implementation by *223 an agency” (6 NYCRR 617.2 [k]). Direct actions "include but are not limited to capital projects, promulgation of agency rules, regulations, laws, codes, ordinances or executive orders and policy making which commits an agency to a course of action” (6 NYCRR 617.2 [k]).
Notwithstanding this broad characterization of the types of agency actions which are subject to the SEQRA review requirement, certain actions are exempt. Specifically, the term "[e]xempt action” includes "[o]fficial acts of a ministerial nature, involving no exercise of discretion” (6 NYCRR 617.2 [q] [2]).
Finally, insofar as relevant hereto, the regulations define an "[involved agency” as "an agency that has jurisdiction by law to fund, approve or directly undertake an action” (6 NYCRR 617.2 [t]). "If an agency will ultimately make a discretionary decision to fund, approve or undertake an action, then it is an 'involved agency’, notwithstanding that it has not received an application for funding or approval at the time the SEQR process is commenced” (6 NYCRR 617.2 [t]).
DISCUSSION
It is undisputed that, notwithstanding petitioner’s filing of the Petition with respondent, the latter has refused to commence the notification procedure, and to schedule a hearing on the Petition, as required by Village Law § 2-204. In this proceeding, respondent argues that the Petition is incomplete because petitioner has not submitted an EAF as required by SEQRA, with respect to a Type I action, that being the classification respondent has assigned to the proposed incorporation. In particular, respondent urges that since petitioner seeks approval of the Petition by the Town Board, he must satisfy the SEQRA review requirements as a condition precedent to her obligation to comply with Village Law § 2-204. As support for that claim, respondent relies upon the decision in Matter of Tri-County Taxpayers Assn. v Town Bd. (55 NY2d 41, supra), in which the Court required that SEQRA be complied with prior to the holding of a special election for the establishment of a new sewer district.
Taking the contrary position, petitioner contends that SEQRA’s requirements have no application to a proposed incorporation of a village. More specifically, petitioner argues that the requirements for providing notice of, and scheduling, a public hearing on an incorporation petition, are mandatory in nature, do not involve any exercise of discretion, and are exempt actions under 6 NYCRR 617.2 (q) (2).
*224 As noted above, 6 NYCRR 617.3 (a) prohibits any agency involved in an "action” from carrying out, funding or approving an action until it has complied with SEQRA. While neither side contends that there is any issue at bar concerning "funding” or "carrying out” an action by respondent or Blooming Grove, they sharply differ on whether compliance with Village Law § 2-204 requires "approval” by respondent.[2] Relying upon the language of 6 NYCRR 617.3 (a), petitioner also contends that he is not an "applicant” under SEQRA, since an "[a]pplicant” is anyone "making an application or other request to an agency to * * * grant an approval in connection with a proposed action” (6 NYCRR 617.2 [d]). Finally, petitioner maintains that there is no "action” of any kind under SEQRA that is involved in the entire incorporation process.
Despite respondent’s facially appealing argument that the incorporation of 1,620 acres of Blooming Grove’s land into a separate village will have environmental effects which must be addressed through SEQRA review prior to the holding of any election under the Village Law, the court agrees with petitioner’s general assertion that SEQRA is not applicable to the incorporation process. In rejecting respondent’s position, the court observes that a general fear of environmental impact does not trigger the necessity of complying with SEQRA. Rather, insofar as relevant to this proceeding, it is only those "actions” by an "involved agency” which require "approval” that mandate SEQRA review.
In order to fit the incorporation process within the requirements of SEQRA, respondent contends that incorporation of the new village requires her to take the "direct action” of promulgating an "executive order”, namely, a directive that a public meeting be advertised and scheduled, which may affect the environment (6 NYCRR 617.2 [b]). The court finds this claim unconvincing.
The powers of a town supervisor are specifically defined by Town Law § 29. There is no provision in that statute for the issuance of "executive orders” by the town supervisor. This is consistent with petitioner’s claim that executive orders are "creatures of 'administrative codes’ and 'chartered’ forms of government” (Lipman reply affidavit ¶ 24; cf., Kiernan v City of *225 New York, 64 Misc 2d 617 [Sup Ct, NY County 1970], affd 35 AD2d 1081 [1st Dept 1970]).
The court recognizes that a town supervisor "[s]hall have and exercise any other power or duty expressly conferred or imposed upon him by law and such powers and duties of administration and supervision of town or special or improvement district functions as shall be provided by resolution of the town board, to be performed on behalf of such board” (Town Law § 29 [16]). Nevertheless, respondent does not contend that she has been granted authority to issue executive orders by any resolution of the Blooming Grove Town Board.
Nor does respondent point to any other law which confers upon her the power to issue executive orders. Instead, she makes the broad claim that "state law does authorize town supervisors to issue executive orders” (Nichol reply affirmation ¶ 21). As her sole support for that contention, she notes that "the state Executive Law expressly authorized, for example, issuance of 'local emergency orders of a chief executive of a * * * city, town or village’ ” (ibid.). Clearly, the statute from which she quotes, Executive Law § 24 (3), provides no support for her position. That provision is part of a statute which deals specifically with emergency orders that may be issued by chief executives of local governments "in the event of a disaster, rioting, catastrophe, or similar public emergency” (Executive Law § 24 [1]). Such a statutory grant of authority for a local chief executive to act to protect the public in times of extreme danger does not constitute support for respondent’s assertion of blanket authority to issue executive orders. Nor for that matter does the court accept respondent’s argument that the process of advertising and scheduling a meeting is one which involves the issuance of an executive order.
Even assuming, arguendo, that a directive by respondent advertising and scheduling a public meeting is an "executive order” within the meaning of SEQRA, such an order does not constitute an "action” unless it also fulfills the condition that it "may affect the environment” (6 NYCRR 617.2 [b] [3]). The criteria for determining the significance of an action upon the environment are set forth in 6 NYCRR 617.11. In this proceeding, respondent argues that the applicable indicators of significant impacts on the environment are: (1) "the creation of a material conflict with a community’s current plans or goals as officially approved or adopted”; (2) "a substantial change in the use, or intensity of use, of land including agricultural, open space or recreational resources, or in its capacity to support *226 existing uses”; (3) "the creation of a material demand for other actions which would result in one of the above consequences”; (4) "changes in two or more elements of the environment, no one of which has a significant effect on the environment, but when considered together result in a substantial adverse impact on the environment; or” (5) "two or more related actions undertaken, funded or approved by an agency, none of which has or would have a significant effect on the environment, but when considered cumulatively would meet one or more of the criteria in this section”. (6 NYCRR 617.11 [a] [4], [8], [9], [10], [11].) More specifically, respondent contends that the proposed incorporation will have deleterious effects on the residents of the new village, including higher taxes and the unavailability of services. She also asserts that there have been certain preincorporation promises made for the construction of a village hall, upgrading of roads, installation of a year-round community water supply and sewer systems, and the development of light industry. These claims do not support the conclusion that her issuance of an executive order complying with Village Law § 2-204 "may have a significant effect on the environment” (6 NYCRR 617.11).
It has been recognized that not every modification of the use or proposed use of property requires compliance with SEQRA. (Cf., Matter of Bishop v Board of Trustees, 81 AD2d 1009 [4th Dept 1981].) Where, as here, the proposed incorporation merely creates a separate government for some of the residents of Blooming Grove, but does not itself result in any construction or the commencement of any new projects within the boundaries of the new village, compliance with SEQRA is not required (see, Matter of Schweiss v Ambach, 98 AD2d 148, 152 [3d Dept 1983], affd 63 NY2d 835 [1984]; see also, Matter of Niagara Recycling v Town Bd., 83 AD2d 335, 339 [4th Dept 1981], affd 56 NY2d 859 [1982]).
Incorporation involves the creation of a new governing body for the individuals and property in the proposed village. In this regard, it is analogous to an "annexation” of property by an existing town or village, with the difference being that there is no currently existing government for the proposed village. Of course, if incorporation of a new village is approved by the voters, then an election of government officers for the new village is conducted (Village Law § 2-242).
An annexation of property, by itself, has been determined not to be a SEQRA action requiring the preparation of a draft environmental impact statement, because it does not commit *227 the governing board to any project or activity (Matter of Connell v Town Bd., 113 AD2d 359 [3d Dept 1985], affa 67 NY2d 896 [1986]; Cross Westchester Dev. Corp. v Town Bd., 141 AD2d 796 [2d Dept 1988]).[3] Rather, it is only if the governing board of the town seeks to take action with regard to the annexed property, such as by developing it in some manner, that the governing board, as the "agency”, will have to comply with SEQRA (supra).
Significantly, like an annexation, an incorporation does not constitute an "action” because it does not, and cannot, commit the new village to the undertaking of any project or activity. Indeed, until such time as a new government has been elected by the residents of the new village (see, Village Law § 2-242), the new village cannot take any actions with regard to the lands within its borders. Absent any authority to commit the new village to any "action” as defined by SEQRA, there is no requirement that a SEQRA review take place before a new village may be incorporated. Nor would there be any meaningful study that could be performed prior to the incorporation of the new village, "because [incorporation], in and of itself, would not create an identifiable plan or program” (Matter of Connell v Town Bd., supra, 113 AD2d, at 363).
The court is also mindful that SEQRA was enacted after the provisions of Village Law article 2, and that, as a consequence, the Legislature did not have SEQRA as a consideration when it defined the requirements for a petition to incorporate a village. For that reason, the court agrees with respondent that Village Law article 2 must be read in pari materia with SEQRA (see, Matter of Sun Beach Real Estate Dev. Corp. v Anderson, 98 AD2d 367, 375 [2d Dept 1983], affd 62 NY2d 965 [1984]).
In performing the necessary analysis of the Village Law and SEQRA, the court has recognized that consideration must be given at the earliest possible time to the impacts which may be reasonably expected to result from a proposed action (ECL 8-0109 [4]; 6 NYCRR 617.1 [c]; Briody v Village of Lewiston, 188 AD2d 1017, 1018 [4th Dept 1992]; Matter of Kirk-Astor Dr. *228 Neighborhood Assn. v Town Bd., 106 AD2d 868, 869, appeal dismissed 66 NY2d 896 [1985]), and that there is a relatively low threshold for SEQRA consideration in proposed actions by agencies (see, H.O.M.E.S. v New York State Urban Dev. Corp., 69 AD2d 222, 232 [4th Dept 1979]). Nevertheless, unless an agency "action” is involved, SEQRA has no application to the incorporation process.
At bar, respondent’s compliance with the requirements concerning notification and scheduling of a public hearing on the Petition do not commit respondent, Blooming Grove, or any new government of the proposed village, to a course of action with regard to either the conducting of an election, the actual incorporation of the proposed village, or "the undertaking of any project or activity in the event of” incorporation (see, Matter of Connell v Town Bd., supra, 113 AD2d, at 362; see also, Briody v Village of Lewiston, supra, 188 AD2d, at 1019).
Rather, compliance with Village Law § 2-204 merely commences a two-step process by which a decision is made upon a proposed incorporation, that being, first, review of objections by the town supervisor, and second, voting by the eligible members of the public. This is clearly distinguishable from the situation in Matter of Tri-County Taxpayers Assn. v Town Bd. (55 NY2d 41, supra), where a town board’s action, subject to a referendum, of the establishment of a sewer district and the construction of related facilities, constituted "a project or activity which committed it to funding and to a course of future decisions as defined by regulation” (see, Matter of Connell v Town Bd., supra, 113 AD2d, at 363; cf., Matter of Programming & Sys. v New York State Urban Dev. Corp., 61 NY2d 738, 739 [1984]).
Weighed against this standard, the incorporation of a new village does not involve an "action”, as defined by SEQRA, on the part of respondent or Blooming Grove. Therefore, respondent lacked authority to require that petitioner submit an EAF as a condition of having the Petition considered complete and accepted for filing, so as to mandate respondent’s compliance with the provisions of Village Law § 2-204.[4]

. Type I actions include, inter alia, "the acquisition, sale, lease, annexation or other transfer of 100 or more contiguous acres of land by a State or local agency”, if they are "directly undertaken, funded or approved by an agency” (6 NYCRR 617.12 [b] [4]).

. The question of whether the steps mandated by Village Law § 2-204 constitute or require an "approval” also relates to the issue of whether Blooming Grove is an "involved agency” in this matter, since an "involved agency” is, inter alia, one which will ultimately make a discretionary decision to "approve” an action (see, 6 NYCRR 617.2 [t]).

. Subsequent to the decision in Matter of Connell v Town Bd. (supra), the Department of Environmental Conservation (DEC) amended its regulations to include annexation of 100 or more contiguous acres of property as a "Type I” action requiring compliance with SEQRA (6 NYCRR 617.12 [b] [4]). The court notes that while the amendment addressed annexations, the only "action” addressed in Matter of Connell v Town Bd. (supra), the DEC has not taken any similar action with respect to the incorporation of a new village.

. While it may be argued that cases such as Matter of Connell v Town Bd. (supra) deal with the requirement for review beyond the filing of an EAF, such as the completion of a draft EIS, nevertheless, an EAF is required only with regard to "actions” (6 NYCRR 617.2 [m]). Therefore, since there is no "action” involved at bar, even the most preliminary review, by way of an *229 EAF, is not required (cf., Lazard Realty v New York State Urban Dev. Corp., 142 Misc 2d 463, 473 [Sup Ct, NY County 1989]).